**CARRIERS TRAFFIC SERVICE, INC., Plaintiff/Petitioner,**

v.

**ANDERSON, CLAYTON & COMPANY, et al., Defendants,**

and

**United States of America and Interstate Commerce Commission, Respondents.**

No. 85 C 8639.

United States District Court, N.D. Illinois, E.D.

Aug. 2, 1988.

Steven C. Weiss, Steven D. Armamentos, Ronald M. Hill, Steven C. Weiss & Assoc., Chicago, Ill., for plaintiff/petitioner.

James Kirk Perrin, Haskell & Perrin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs Orscheln Bros. Truck Lines, Inc. ("Orscheln") and Barry S. Schermer brought this diversity action against Anderson, Clayton & Co. ("Anderson Co.") seeking the collection of freight undercharges on the interstate shipment of various food products. Carriers Traffic Service, Inc. ("CTS"), assignee of this cause of action, was subsequently substituted as plaintiff, and we referred the matter to the Interstate Commerce Commission ("ICC"). The ICC ruled against the CTS, which then named the United States and the ICC as respondents herein. The parties now move for summary judgment. For the reasons set forth in this opinion, we deny CTS's motion and grant Anderson Co.'s and the ICC's motions.

### Factual Background[1] and Procedural History

Orscheln, a motor carrier within the meaning of the Interstate Commerce Act, 49 U.S.C. § 10101, and Anderson Co. en-tered into an agreement by which Orscheln would carry various food products between Anderson Co.'s facilities in Illinois and various destinations. Between May 1982 and August 1983 Orscheln transported the goods without incident. In apparent expectation of a lower carrier rate, Anderson Co. actually loaded and counted the goods before turning them over to Orscheln.

Orscheln billed Anderson Co. for the transportation service under the published tariff rate OBTL 400–F, Item 350, which incorporates by reference tariff rate MWB 125 Series, Item 578. Orscheln later determined that Anderson Co. was undercharged in the amount of $69,023.88. Specifically, Orscheln determined that the reduced tariff rate of Item 350 was inapplicable because Anderson Co. did not comply with the following condition precedent (hereafter the "notation requirement") to application of the reduced rate of Item 578:

(1) At time of shipment, consignor must endorse on the Bill of Lading and Shipping Order the notation "Consignor load and count and/or consignee must unload" the shipments as the case may be.

\*    \*    \*    \*    \*    \*

(6) If the consignor fails to comply with the requirements of paragraph (1) herein, or if for any reason the consignor or any party tendering any portion of the shipment refuses to perform the loading and counting or the consignee, or any party receiving any portion of the shipment refuses to perform the unloading and counting, the rate will not apply and rates otherwise published will be assessed.

Anderson Co. refused to pay the requested balance, and Orscheln filed this action in which CTS was substituted as plaintiff. The Anderson Co. settled a portion of the claim with CTS but raised the defense to liability for the remaining portion ($46,-354.42) that pursuit of the freight undercharges is an unreasonable practice under 49 U.S.C. § 10701(a).[2] Recognizing the

---

1. The facts set forth in this section are undisputed unless noted otherwise.

2. Section 10701 provides in pertinent part:

ICC's exclusive primary jurisdiction over this determination, we referred the action to the ICC for proceedings on the reasonableness of assessing the higher rates. In an August 25, 1987 order, the ICC found that application of the notation requirement of Item 578 as a condition precedent to receipt of the lower rate under Item 578 is an unreasonable practice, and CTS is accordingly not entitled to a higher rate. ICC Decision No. MC–C–10995 (August 25, 1987).

CTS then moved to reinstate this case in order to challenge the decision of the ICC. CTS now moves for summary judgment seeking undercharges for transportation of the food products and contending that the ICC's decision that Item 578 as applied is an unreasonable practice was arbitrary and capricious and contrary to law. In its response and own motion for summary judgment, the Anderson Co. argues that the Court should uphold the ICC's decision. The ICC in its motion for summary judgment also seeks affirmance of its decision.

## Discussion

The carrier-shipper relationship between Orscheln and the Anderson Co. is virtually identical to the relationship between Inman and Boise Cascade in another case decided today by this Court on summary judgment. *Inman Freight Systems, Inc. v. Boise Cascade Corporation*, 691 F.Supp. 146 (N.D. Ill.1988) (*"Inman"*). The ICC in its decision here that application of the higher rate to Orscheln's transportation of Anderson Co. goods is an unreasonable practice used reasoning and language identical to that of its holding in *Inman*. CTS challenges the ICC decision here with the same contentions that the carrier Inman proffered unsuccessfully in *Inman*. Accordingly, for the same reasons that we uphold the decision of the ICC in *Inman*, we find that the ICC decision here was not arbitrary and capricious or unsupported by law.

§ 10701. Standards for rates, classifications, through routes, rules and practices.
    (a) A rate (other than a rail rate), classification, rule, or practice related to transportation

## Conclusion

For the reasons set forth above and in the attached opinion, CTS's motion for summary judgment is denied, and Anderson Co.'s and the ICC's motions for summary judgment are granted. It is so ordered.

or service provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title must be reasonable.